SUMNER *v.* LOVELLETTE, SHERIFF OF VIGO COUNTY.

[No. 169S23. Filed April 3, 1970. No petition for rehearing filed.]

*Woodrow S. Nasser, Jack A. Wilson, Wilson & Nasser,* of Terre Haute, for appellant.

*Frederick T. Bauer,* of Terre Haute, for appellee.

HUNTER, C.J.—This action was brought by appellant against appellee for a writ of habeas corpus arising out of the alleged wrongful restraint and detention of appellant pursuant to extradition proceedings between this state and the State of Tennessee. Trial was had before the Vigo County Superior Court which ordered that appellant be delivered up to Sheriff Bilyeu, the agent of Tennessee, to be transported to that state.

Appellant sets out various assignments of error in his motion for new trial some of which he fails to argue on this appeal. The law is clear that grounds urged in a motion for new trial, not discussed in the argument section of the brief, are deemed waived. *Brown* v. *State* (1969), 252 Ind. 161, 247 N. E. 2d 76; *Short* v. *State* (1968), 250 Ind. 459, 237 N. E. 2d 258.

The two principal contentions advanced by argument in appellant's brief relate to errors occurring at trial. It is further argued that the decision of the trial court is contrary to law in that the extradition papers were allegedly deficient under the Uniform Criminal Extradition Act (Ind. Ann. Stat. §§ 9-419-448 [1956 Repl.]).

Looking first to the errors alleged to have occurred at trial, appellant argues that highly prejudicial hearsay evidence was allowed to be entered over his objection. More specifically it is contended that appellant was denied the right to confront and cross-examine an identifying witness whose affidavit was admitted in the record. The affidavit complained of was that of one Jewell Allison who swore that appellant was in Tennessee and had defrauded her of $6,000. Additionally she swore that she had identified a picture of defendant as being the same man who defrauded her and that such picture was attached to her statement.

Appellant cites as authority for the exclusion of the affidavit cases and other reference works which merely reaffirm the general rule that an accused has the right to confront and cross-examine witnesses against him. This rule is so well established and basic to this country's concepts of ordered liberty and due process that we need not be reminded of its significance to an accused. Inquiry in a habeas corpus proceeding pursuant to extradition is limited, however, to identifying the alleged fugitive as being one and the same individual as charged in the indictment or affidavit accompanying the requisition:

> "The guilt or innocence of the accused as to the crime of which he is charged may not be inquired into by the governor or in any proceeding after the demand for extradition accompanied by a charge of crime in legal form as above provided shall have been presented to the governor, *except* that as it may be involved in identifying the *person held* as the *person charged with the crime.*" (emphasis added) Ind. Ann. Stat. § 9-438 (1956 Repl.).

See also, *Johnson* v. *Burke, Deputy Sheriff, etc.* (1958), 238 Ind. 1, 148 N. E. 2d 413; *Taylor* v. *Smith* (1938), 213 Ind. 640, 13 N. E. 2d 954. Thus, evidence relating to the various aspects of petitioner's probable guilt or innocence has been properly excluded by this court on previous occasions. *Gluff* v. *Rouls, Superintendent, Indianapolis Police Dept.* (1950), 228 Ind. 186, 91 N. E. 2d 176; *Cook* v. *Rodger, Sheriff* (1939), 215 Ind. 500, 20 N. E. 2d 933.

In the instant case therefore, the issue is not whether petitioner could have been in the state so as to commit the crime, but rather is whether the man sought to be extradited is indeed the same man arrested under the warrant. To consider if petitioner could have been in the state or otherwise available to commit the alleged crime goes to the merits of the case on the issue of alibi. Consequently, to entertain evidence at a habeas corpus proceeding which tends to establish petitioner's presence elsewhere at the time of the offense is to give him a de facto trial on the merits prior to extradition.

Keeping in mind the nature and scope of a habeas corpus proceeding relative to an arrest pursuant to extradition, it must also be noted that the usual rules of evidence are not applicable. *Notter* v. *Beasley, Sheriff of Vigo County* (1960), 240 Ind. 631, 166 N. E. 2d 643, and numerous cases there cited. See also 93 A. L. R. 2d 912. This being the law, the affidavit of Jewell Allison with the accompanying photograph identified to be that of appellant was competent evidence to establish appellant's identity. *Notter* v. *Beasley, supra.* In fact it appears that appellant admitted at the hearing that the photograph was in fact one of him.

Appellant next contends that the trial court erred in overruling his objections to the purported telephone conversation had between Raymond Tryon, witness for appellee and a person presumed to have been Sheriff Bilyeu of Putnam County, Cookeville, Tennessee. It is argued that such evidence is inadmissible unless a foundation first be laid as to the identity of the person with whom the witness was speaking. However, we need not determine whether such evidence was improperly admitted. Appellant fails to show in what manner such evidence prejudiced his case. Further, his identity had already been established by his own admission that it was indeed his picture that the affiant, Jewell Allison, had identified. Consequently, the admission of the testimony relating to the telephone conversation, *if improper* would be harmless error.

Appellant's final argument is that the trial court's decision is contrary to law in that the extradition papers were deficient. The Uniform Criminal Extradition Act provides in part:

"No demand for the extradition of a person charged with crime in another state shall be recognized by the governor unless in writing and accompanied by a copy of an indictment found or by an information supported by affidavit in the state having jurisdiction of the crime, or by a copy of an affidavit made before a magistrate there, together with a copy of any warrant which was issued

thereon. The indictment, information, or affidavit made before the magistrate must substantially charge the person demanded with having committed a crime under the law of that state; and the copy must be authenticated by the executive authority making the demand, which shall be prima facie evidence of its truth." Ind. Ann. Stat. § 9-421 (1956 Repl.)

Also:

"A warrant of extradition shall not be issued unless the documents presented by the executive authority making the demand show that:

1. Except in cases arising under section six [§ 9-424], the accused was present in the demanding state at the time of the commission of the alleged crime, and thereafter fled from the state;

2. The accused is now in this state, and

3. He is lawfully charged by indictment found or by information filed by a prosecuting officer and supported by affidavit to the facts, or by affidavit made before a magistrate in that state, with having committed a crime under the laws of that state, or that he has been convicted of a crime in that state and has escaped from confinement or broken his parole." Ind. Ann. Stat. § 9-423 (1956 Repl.)

The warrant of extradition is alleged, by appellant, to be insufficient in the present case since: (1) there is nothing contained therein stating or showing that the accused was in the demanding state of Tennessee at the time of the alleged offense by way of sworn document; (2) that the document entitled "State Warrant" fails to allege that the acts complained of constitute an unlawful act; (3) the person signing the "State Warrant" is in no manner identified as being a prosecuting officer; (4) that the requisition documents do not contain any affidavit, information or indictment on which to base a warrant of extradition; (5) that nowhere in the documents contained in the Governor's Warrant of Extradition is there any allegation that a felony, or even a misdemeanor had been committed in Tennessee; and (6) that the "State Warrant" is so vague that it does not properly allege a crime.

Upon a careful examination of the extradition papers properly made a part of the record in this case, it is our conclusion that appellant's contentions as to their sufficiency are ▆ completely without merit. All of appellant's points relating to the deficiency of the extradition papers will be dealt with in the order presented above:

(1) the statute [§9-423] requires that the documents presented by the executive authority of the demanding state show that the accused was present in that state at the time the alleged offense was committed and thereafter fled. It is clear from the affidavit of the prosecuting attorney, sworn to before a notary public and attached to the governor's demand that appellant was present at the time the offense was committed.

(2) it is not a statutory requirement that the "State Warrant" allege that the act complained of constitute an unlawful act. Section 4-923(3) requires only that the documents filed show that the person sought has been lawfully charged with having committed a crime under the laws of that state. The "State Warrant" in addition to all supporting documents clearly satisfies this requirement.

(3) the statute does not require that the prosecuting attorney sign the "State Warrant." The supporting papers accompanying the governor's demand include an affidavit by Jewell Allison *made before the Judge of Putnam County, Tennessee.* Clearly this satisfies § 9-423(3).

(4) the statutory requirement that the demand be accompanied by a copy of an indictment found *or* by an information supported by affidavit in the state having jurisdiction *or* by a copy of an affidavit made before a magistrate [§ 9-421] is satisfied by the affidavit of Jewell Allison.

(5) the contention that nowhere in the documents contained in the Governor's Warrant of Extradition is there an allegation that a felony, or even a misdemeanor has been committed in Tennessee is wholly frivolous.

(6) appellant fails to show in what manner the "State Warrant" is vague. It is manifestly evident to this court that the offense and its nature have been properly alleged.

There being no merit to those errors assigned and argued by appellant, the decision of the trial court is hereby affirmed.

Judgment affirmed.

Arterburn, Givan, DeBruler, JJ., concur; Jackson, J., dissents with opinion.

DISSENTING

JACKSON, J.—I am unable to concur in the majority opinion herein and dissent thereto.

The State of Tennessee attempted to extradite the appellant on an alleged criminal charge and appellant brought a petition for a writ of habeas corpus in the Vigo Superior Court. A trial was had and judgment was had against the appellant which reads as follows:

"It is therefore ordered that James Russell Sumner be delivered up to Sheriff Bill Bilyeu, the agent of the State of Tennessee to be transported to said State, agreeable to the laws of the United States and the State of Indiana."

Appellant's motion for a new trial in pertinent part reads as follows, to-wit:

"Comes now the plaintiff, James R. Sumner, and moves the Court for a new trial on each of the following grounds;
1. The decision of the court is not sustained by sufficient evidence.
2. The decision of the Court is contrary to law.
3. Error of law occurring at the trial, as follows:
   A. The Court erred in accepting into evidence over the objection of plaintiff herein the Governor's warrant, which was offered by defendant; such objections being as follows, to-wit:

(1) That there was no statement in the 'State warrant' that the accused was personally in the demanding State of Tennessee at the time of the commission of the alleged crime.
(2) The 'State warrant' contained in said Governor's warrant does not allege an 'unlawful act', nor a violation of the laws of the State of Tennessee.
(3) The person acknowledging the 'State warrant' contained in said governor's warrant is not identified as being a prosecuting officer, which the Uniform Extradition Act states should be done. Ind. Burns' Ann. 9-423.

(4) That in said Extradition Act the accused must be '. . . lawfully charged by indictment found, or by information filed by a *prosecuting officer* and supported by affidavit with the facts, or by affidavit made before a magistrate in the State, with having committed a crime under the laws of that State . . .' (Emphasis Added).

(5) That there is no affidavit, indictment or information contained in said Governor's warrant.

(6) That in the State warrant contained in said Governor's warrant there is no felony alleged to have been committed.

(7) That said State warrant is vague and does not allege a crime by reason that it alleges that approximately $5,000.00 was involved in the matter.

B. The Court erred in allowing the contents of a telephone conversation of witness, Raymond Tryon, detective for the City of Terre Haute, Indiana, to an alleged person in the State of Tennessee, identified by witness Tryon as a law officer from said State, over plaintiff's objection that the conversation of the alleged person from Tennessee as related by detective Tryon was hearsay. A Motion To Strike in this regard was overruled by the Court.

C. That the Court erred in admitting into evidence the testimony of witness Raymond Tryon, over objection of plaintiff that this testimony was hearsay evidence; such testimony being that a photograph of the plaintiff herein, taken by the Terre Haute police department, was sent by witness Raymond Tryon, to the Sheriff of Putnam County, Tennessee, for identification, and that the picture was identified as being the plaintiff herein.

D. The Court erred in admitting into evidence defendant's Exhibit, over plaintiff's objections thereto, for the reason that the photograph and attached papers to said Exhibit were in no manner authenticated nor was there a proper foundation laid for each or any of said documents and photographs admitted.

E. The Court erred in allowing into evidence, over plaintiff's objection, the testimony of witness Raymond Tryon, detective for the City of Terre Haute, Indiana, wherein he stated in part, '. . . to have defendant returned to Tennessee . . .'; that such statement indicates that plaintiff was in Tennessee as alleged, and would be a conclusion which is prejudicial to plaintiff.

4. The Court erred in overruling plaintiff's Motion to Stay Order.

5. The Court erred in overruling plaintiff's Petition for Reconsideration of trial Judge's order in denying petitioner's Motion to Stay order.

WHEREFORE, the plaintiff prays the Court for a new trial of this cause.

*Woodrow S. Nasser*
Woodrow S. Nasser
Attorney For Plaintiff

## MEMORANDUM

The decision is not sustained by sufficient evidence in the following particulars:

1. The evidence is insufficient to identify the plaintiff herein as one and the same person requisitioned and demanded for extradition from the State of Indiana by the State of Tennessee, nor is the evidence sufficient to identify the plaintiff herein as one and the same person sought by the warrant upon requisition of the Governor of the State of Indiana.

2. The evidence is insufficient to establish that the plaintiff was in the demanding State of Tennessee on the date of the alleged crime as set forth in the requisition.

3. The decision is contrary to law in the following particulars:

1. It is not sustained by sufficient evidence.

2. It violates the Uniform Criminal Extradition Act of Indiana.

3. It violates the Constitution of the United States, Amendment XIV, by denying plaintiff due process of law.

4. Defendant failed to sustain its burden to prove by preponderance of the evidence that plaintiff is the same person sought by the State of Tennessee by its requisition and demand, and by the warrant upon requisition by the Governor of the State of Indiana; by reason that the prima facie case established as a matter of law wherein the name on the Governor's warrant and the name of plaintiff herein are the same, was overcome by plaintiff testifying that he was not one and the same person requisitioned nor was he in the demanding State at the time of alleged offense, and that the burden of identification shifted back to defendant.

5. It violates the Acts of the General Assembly of Indiana, 1935, Ch. 49, §§ 2, 3, 5, p. 134."

Appellant's Assignment of Errors is the single specification "1. The Court erred in overruling appellant's motion for a new trial."

A summary of evidence pertinent to the issues raised by the pleadings herein is set forth briefly as follows:

## "STATEMENT OF EVIDENCE

Statement of testimony, exhibits offered for evidence, and objections thereto.

Raymond Tryon, witness for Appellee, direct examination, (Tr. p. 67 ll 12-27; p. 68 ll 1-26; p. 69 A; p. 69-B. p. 69)

Q. All right. Now, after that photograph was sent to Sheriff Bilyeu did you later have a contact with his office in regard to that photograph?

A. I did.

Q. And can you tell us the approximate date upon which you did have this contact?

A. April the 18th, 1968.

Q. And what were you advised on that date?

MR. NASSER: We would object to the hearsay testimony.

COURT: Overruled.

A. Sheriff Bilyeu advised me that he had received the photograph and identifications as per Mr. Sumners. This subject was identified as being involved in their locality, and a warrant would be forwarded for his arrest.

(At this time Mr. Bauer handed Defendant's Exhibit Number One to Mr. Nasser for examination.)
(Tr. p. 67 ll 12-27)

MR. NASSER: We would object to the papers attached to the photograph.

MR. BAUER: Your Honor, we would offer in evidence at this time what has been marked as Defendant's Exhibit Number One for identification, which is a photograph which has been testified in regard to, along with an affidavit bearing the signature of a Jewell Allison, who is named as the complainant in the papers that are contained in the Requisition and Warrant which has already been admitted into evidence.

COURT: All right, let the record show—

MR. NASSER: We would object to the admission of the papers attached to the photograph. There has been no proper foundation laid for the admission of the papers attached. They have not been in any manner authenticated. There has been no testimony whatsoever to the papers attached to the photograph. We have no objections to the introduction of the photograph.

COURT: Objection overruled. Let the record show Defendant's Exhibit Number One offered and received in evidence.

DEFENDANT'S EXHIBIT NUMBER ONE IS IN THE WORDS AND FIGURES FOLLOWING, TO-WIT:
(Tr. p. 68 ll 1-26)

'Photograph with Jewell Allison endorsed on back—9/22/68 E. C. Hale'

I, Miss Jewell Allison, being duly sworn by Agent E. C. Hale, Tennessee Bureau of Criminal Identification, do solomly swear that the James Russell Sumner was in Putnam County, Tennessee on October 20, 1967 alleged in indictment and did defraud me of approximately $6,000.00. In addition to above, I have identified a picture of defendant as being the same man, who defrauded me of said $6000.00 and have attached photograph to this statement after placing my name on back of said photograph.

This the 22 day of September 1968.

*Jewell Allison*

Sworn to and subscribed to before me the 22 day of September, 1968.

/s/ *E. C. Hale*
E. C. Hale, Criminal Investigator
Tennessee Bureau of Criminal
Identification

Deft's Exhibit #1
(DBC)   10/4/68

(Tr. p. 69 A)

TO WHOM IT MAY CONCERN:

I, A. F. Officer, Jr., Assistant District Attorney, 5th Judicial District, State of Tennessee, do hereby certify that E. C. Hale is a Criminal Investigator for the Tennessee Bureau of Criminal Identification, and is authorized by law to administer oaths and take sworn affidavits in the State of Tennessee.

Witness my hand this 27th day of September, 1968.
/s/ *A. F. Officer, Jr.*
A. F. Officer, Jr.
Assistant District Attorney

Sworn to and subscribed before me on this the 27th day of September 1968.
*John R. Officer*
Notary Public

My Commission Expires
4-15-70

STATE OF TENNESSEE
COUNTY OF PUTNAM

I, Charles Vaughn, Circuit Court Clerk of Putnam County, Tennessee, certify that A. F. Officer, Jr., whose genuine signature is subscribed to the foregoing, is the duly appointed Assistant Attorney General for Putnam County, Tennessee, and the 5th Judicial Circuit, and was at the date of the foregoing, and that his attestation is in due form, and that full faith and credit is due to all of the official acts.

Witness my hand this the 27 day of Sept. 1968.
/s/ *Charles C. Vaughn*
Charles Vaughn,
Circuit Court Clerk

(SEAL)

(Tr. p. 69 B)

RAYMOND TRYON, witness for Appellee, direct examination, (Tr. p. 65 ll 19-27; p. 66 ll 1-2. ll 11-24; p. 67 ll 12-21)

A.  I received a long distance telephone call March the 23rd, this year.

Q.  And from where—where did the call originate from?

A.  It was from Sheriff Bill Bilyeu, of Putnam County, Cookeville, Tennessee.

MR. NASSER: We would object, and move to strike, based upon the problem of identification by a telephone call received.

COURT: Overruled.

Q.  And do you recall when this call was received?

A.  Twelve thirty p.m., March the 23rd, 1968.

Q.  Would you advise the Court of what the—what the nature of the request was that you got in regard to Mr. Sumner?

MR. NASSER: We would object to any hearsay testimony, which the question calls for as it relates to the telephone call received.

COURT: Overruled.

A. The nature of the telephone call was an inquiry into the records or identification of a James Russell Sumner and Charles Huddleston, who were believed involved in—

MR. NASSER: We would object to any testimony regarding anyone other than the petitioner in here.

COURT: I don't think we need to go into the charge. In other words, as a matter of identification, I think he can testify as to that.

Q. All right. Now, after that photograph was sent to Sheriff Bilyeu did you later have a contact with his office in regard to that photograph?

A. I did.

Q. And can you tell us the approximate date upon which you did have this contact?

A. April the 18th, 1968.

Q. And what were you advised on that date?
MR. NASSER: We would object to the hearsay testimony.

COURT: Overruled."

For Appellant to obtain due process of law, it is incumbent that the judgment of the trial court be reversed.

The trial court overruled Appellant's objections to the purported telephone conversation had between Raymond Tryon, witness for Appellee, and a person purportedly to have been Sheriff Bill Bilyeu of Putnam County, Cookeville, Tennessee. (Tr. p. 65 ll 19-27).

"A. I received a long distance telephone call March the 23rd, this year.

Q. And from where—where did the call originate from?

A. It was from Sheriff Bill Bilyeu, of Putnam County, Cookeville, Tennessee.

MR. NASSER: We would object, and move to strike, based upon the problem of identification by a telephone call received.

COURT: Overruled.
(Tr. p. 66 ll 1-24)

Q. And do you recall when this call was received?

A. Twelve thirty p.m., March 23rd, 1968.

Q. Now, are you personally acquainted with a James Russell Sumner?

A. I am.

Q. And if you see him present in Court would you point to him and state his name?

A. This is him, James Russell Sumner.

MR. BAUER: Would you let the record indicate that the witness pointed to the Petitioner in this matter.

Q. Would you advise the Court of what the—what the nature of the request was that you got in regard to Mr. Sumner?

MR. NASSER: We would object to any hearsay which the question calls for as it relates to the telephone call received.

COURT: Overruled.

A. The nature of the telephone call was an inquiry into the records or identification of a James Russell Sumner and Charles Huddleston, who were believed involved in—

MR. NASSER: We would object to any testimony regarding anyone other than the Petitioner in here.

COURT: I don't think we need to go into the charge. In other words as a matter of identification, I think he can testify as to that." (Tr. p. 66 ll 1-24).

There was no showing made by Appellee that witness Tryon recognized the voice of the person with whom he was speaking nor was any other foundation laid to establish the identity of the speaker alleged to have been Sheriff Bill Bilyeu.

To allow such telephone conversation to be admitted as evidence it was essential that the Appellee establish that the witness, Raymond Tryon, recognized or otherwise identified, the voice of the person from whom he received the long distance telephone call testified to. *Holland* v. *O'Shea*, 95 N. E. 2d 515, 342 Ill. App. 127 (1950); *Burton* v. *Pacific Mutual Life Insurance Company*, 84 A. 2d 310, 368 Pa. 613.

The Uniform Extradition Act was adopted in Indiana under the Title of Acts 1935, ch. 49, § 1-31 p. 134, more commonly referred to as Burns' Indiana Statutes, Ann.

9-419—9-447 (except for Burns' 9-402—9-417 which have been repealed by Acts 1963, ch. 2, § 5).

Section 9-421 of Burns' provides the form of the Demand, to wit:

9-421.    Form of Demand.—

No demand for the extradition of a person charged with crime in another state shall be recognized by the governor unless in writing and accompanied by a copy of an indictment found or by an information supported by affidavit in the state having jurisdiction of the crime, or by a copy of an affidavit made before a magistrate there, together with a copy of any warrant which was issued thereon. The indictment, information, or affidavit made before the magistrate must substantially charge the person demanded with having committed a crime under the law of that state; and the copy must be authenticated by the executive authority making the demand, which shall be prima facie evidence of its truth. (Acts 1935, ch. 49, § 3, p. 134.)

and, Section 9-423 provides what the contents of the documents presented by the executive authority of the demanding state should contain, to wit:

9-423.    Contents of Papers.—

A warrant of extradition shall not be issued unless the documents presented by the executive authority making the demand show that:

1.    Except in cases arising under section six (§ 9-424), the accused was present in the demanding state at the time of the commission of the alleged crime, and thereafter fled from the state;

2.    The accused is now in this state, and

3.    He is lawfully charged by indictment found or by information filed by a prosecuting officer and supported by affidavit to the facts, or by affidavit made before a magistrate in that state, with having committed a crime under the laws of that state, or that he has been convicted of a crime in that state and has escaped from confinement or broken his parole. (Acts 1935, ch. 49, § 5, p. 134)

The warrant of extradition herein issued by the Governor of the State of Indiana was issued on insufficient documents contained in the requisition papers, as follows:

(1)    There is nothing contained therein (Tr. p. 58 to Tr. p. 64) stating that the accused was in the demanding State

of Tennessee at the time of the alleged offense by way of any sworn document. Burns' 9-423 (1) states that such documents must 'show' the accused was in the demanding State at the time of the commission of the alleged crime. There is no paper within said documents from the State of Tennessee, which has been sworn to by a Prosecuting Officer that the accused herein was in the demanding State at the time of the alleged crime of Larceny By Trick on or about the 18th day of October, 1967. The only reference made of the accused being allegedly within the State of Tennessee at the time of the alleged crime is in the page containing the Request of the Governor of Tennessee to the Governor of Indiana which is no more than an unverified allegation of such (Tr. p. 59).

(2) That the document self-identified as a 'State Warrant' in no manner alleges or states that the alleged facts therein constitute an unlawful act, or that such was a violation of the laws of the State of Tennessee, as required by Uniform Extradition Act as adopted by the State of Indiana. (Tr. p. 62). See Burns' Indiana Statutes, Anno. 9-423 (3) :

'9-423. Contents of papers. A warrant of extradition shall not be issued unless the documents presented by the executive authority making the demand show that:

. . . . .

3. He is lawfully charged . . . *with having committed a crime under the laws of that State.* . . . (Acts 1935, ch. 49, § 5, p. 134) (Emphasis added).

(3) The person signing the 'State Warrant' is in no manner identified as being a 'prosecuting officer' as is required by Uniform Extradition Act as adopted by the State of Indiana. (Tr. p. 62) See Burns' Indiana Statutes, Anno. 9-423 (3) :

'9.423. Contents of papers. A warrant of extradition shall not be issued unless the documents presented by the executive authority making the demand show that:

. . . . .

3. He is lawfully charged by indictment found or by information filed by a *prosecuting officer* and supported by affidavit to the facts. . . . (Acts 1935, ch. 49, § 5, p. 134) (Emphasis added).

(4) That the requisition documents do not contain any affidavit, information or indictment on which to base a warrant of extradition as is necessary under the Uniform Extradition Act as adopted by the State of Indiana. (Tr. pp.

Burns' Indiana Statutes, Anno. 9-421. Acts 1935, ch. 49, § 3, p. 134.) The application for a requisition (Tr. p. 61) states that there is a certified copy of an indictment attached thereto, on which said requisition is being made, but an examination of the documents contained in the Governor's Warrant (Tr. pp. 58-64) results in one being unable to find such. Appellant contends that this is a fatal omission.

The ruling of *Dawson* v. *Beasley*, 242 Ind. 536, 180 N. E. 2d 367, that the lack of an indictment in the requisition papers, to wit, a complaint, has no application herein, by reason that there are no such supporting documents in the case herein.

(5) That nowhere in the documents contained in the Governor's Warrant of Extradition is there any allegation that a felony, or even a misdemeanor, had been committed within and against the State of Tennessee. (Tr. pp. 58-64). The Uniform Extradition Act, as adopted in the State of Indiana, was adopted to expedite the extradition of persons sought to the demanding state wherein they have been charged with a crime. In this case, there is no crime charged against the State of Tennessee; hence, no basis for use of the Act.

(6) That the 'State Warrant' is so vague that it does not properly allege a crime. (Tr. p. 62).

The Uniform Extradition Act was not adopted to be haphazardly followed, but serves as a legal guideline for the courts to follow in extraditing fugitives from justice. The courts are bound to demand some positive identification of the person before it being the one sought, if the petitioner overcomes the prima facie aspects of the Warrant of Extradition. In the instant case, Appellant overcame such prima facie identification, by testifying that he was not the 'James Russell Sumner' sought by said Warrant, nor was he ever in the State of Tennessee. (Tr. p. 51, ll. 19-23. Tr. p. 52, l. 1) Hence the burden shifted to the Appellee to properly identify Appellant as the one sought.

The Uniform Extraditoin Act, as adopted by the State of Indiana, liberalizes certain procedural features, *Cook* v. *Rodgers*, 215 Ind. 500, 20 N. E. 2d 933, but the documents received by the Governor of Indiana from the Demanding State must contain certain basic elements before a prima facie case can be made against the alleged person sought. *Cook* v. *Rodgers*, *Supra.*, U. S. Const. Art. 4, § 2, 7 FCA, til. 18, § 662.

Even the liberal interpretation made in *Notter* v. *Beasley*, 240 Ind. 631, 166 N. E. 2d 643, wherein it was held that if the person being sought has the same name as petitioner, then a prima facie case of identity was established, does not apply herein. When appellant overcame the rebuttable presumption by his testimony as above stated, (Tr. p. 51, ll, 12-27. Tr. p. 52, ll, 1-2) then the entire Governor's Warrant was otherwise insufficient to establish identity.

It is submitted that for the Court to have allowed the Governor's Warrant into evidence in the first instance, over appellant's objections, that he was denied Due Process of Law, and secondly, for the Court to make the judgment which it did, based upon an incomplete and inadequate Warrant of Extradition, that such was contrary to law in Indiana.' "

I am of the opinion the court committed error in denying the application for a writ of habeas corpus and that the judgment of the Vigo Superior Court should be reversed and cause remanded with instructions to grant the writ to the plaintiff.

NOTE.—Reported in 256 N. E. 2d 681.